**NOT PRECEDENTIAL**

UNITED STATES COURT OF APPEALS
FOR THE THIRD CIRCUIT
_____

No. 22-3290
_____

UNITED STATES OF AMERICA

v.

JAMES EDWARD KING,
                                        Appellant
_____

On Appeal from the United States District Court
for the Middle District of Pennsylvania
(D.C. No. 4:20-cr-00158-001)
District Judge:  Honorable Matthew W. Brann
_____

Submitted Pursuant to Third Circuit L.A.R. 34.1(a)
June 12, 2025
_____

Before:  CHAGARES, <u>Chief</u> <u>Judge</u>, PORTER and AMBRO, <u>Circuit</u> <u>Judges</u>

(Filed: June 17, 2025)
_____

OPINION[*]
_____

---

[*] This disposition is not an opinion of the full Court and, pursuant to I.O.P. 5.7, does not constitute binding precedent.

CHAGARES, Chief Judge.

James King was convicted of conspiracy to distribute and possess with intent to distribute methamphetamine, in violation of 21 U.S.C. § 846. The methamphetamine attributed to King and his co-conspirator, Christopher Brown, was seized — pursuant to a search warrant — from a United Parcel Service ("UPS") package that was labeled with a fictitious name and Brown's address. King challenges the District Court's denial of his motion for a hearing under Franks v. Delaware, 438 U.S. 154 (1978), to contest the validity of the search warrant. But we, like the District Court, conclude that King had no reasonable expectation of privacy in the package and will therefore affirm.

I.[1]

On October 4, 2019, Pennsylvania State Police ("PSP") were advised by a confidential informant that a UPS package containing one pound of methamphetamine would be delivered to Brown's residence and that Brown and King would work together to retrieve the package. The informant also told PSP that the package label would list someone else's name. In coordination with a UPS distribution center, law enforcement officers confirmed that there was a package due to arrive that day at Brown's residence, verified that the named addressee had no affiliation with the delivery address (and, in fact, was likely not a real person), and arranged to meet the UPS driver who was transporting the package.

---

[1] We write primarily for the parties, and so we recite only the facts necessary to decide the case.

2

Two PSP troopers stopped the UPS truck to speak with the driver and investigate the suspected package. At the request of PSP, a Union County Sheriff's Office deputy accompanied by a drug detection dog (hereinafter, "canine unit") arrived at the truck shortly thereafter. Upon arrival, the deputy expressed concerns that, given the windy conditions in the now-opened truck trailer where the suspected package was located (alongside other, non-suspected packages), any odor was likely "destroyed" and the officers would not "get an indication" from the canine unit. Appendix ("App.") 206. The officers proposed moving the package inside the truck, closing the trailer, and letting the package "sit [t]here for 40 minutes" to "build its odor back," but this was not feasible given the UPS driver's time constraints. App. 706. The officers opted to allow the canine unit to inspect the packages anyway, which yielded "no indication . . . on any of the packages." App. 208.

With the consent of the UPS driver, who received approval from his supervisors, the officers transferred the UPS package to a nearby police barracks where the canine unit performed a second inspection. This time, the canine unit "indicated on it," which suggested the presence of "illegal narcotic[s] in th[e] package." App. 213. One of the PSP troopers promptly sought a warrant to search the package. The trooper submitted an affidavit in support of the warrant application, which detailed the tip from the confidential informant, PSP's corroboration of the information provided by the informant, and the positive indication by the canine unit. The affidavit did not mention the initial canine unit deployment that did not result in a positive hit. A judge issued a search warrant later that day.

Pursuant to the search warrant, PSP searched the package, discovered the pound of methamphetamine therein, seized the methamphetamine, and arranged for a controlled delivery of a noncontrolled substance, which resulted in the arrest of both Brown and King. A federal grand jury in the Middle District of Pennsylvania subsequently returned a two-count indictment against King charging him with conspiracy and attempt to distribute methamphetamine.

King and Brown filed motions to suppress the evidence obtained from the seizure and search of the UPS package and, in particular, to obtain a Franks hearing regarding the validity of the search warrant. The District Court denied these motions. Drawing upon Supreme Court precedent and that of other courts, the District Court observed that a constitutionally cognizable "expectation of privacy can apply [to en route mail] even where the intended recipient uses a fictitious name," but "a defendant cannot claim a reasonable expectation of privacy over a package mailed to a third party." App. 24. Thus, while Brown was ultimately denied relief, the District Court held that he at least "possessed a reasonable expectation of privacy in the UPS package" since he resided at the delivery address and admitted that the package bearing the fictitious name was intended for him. App. 25. But the District Court held that King, who was neither the sender nor addressee, could not claim a reasonable expectation of privacy in the package based on his mere assertion that he was the individual for whom the package was "ultimately intended." App. 26.

4

After a four-day trial, a jury found King guilty on the conspiracy count and not guilty on the attempt count.  The District Court sentenced King to 210 months of imprisonment.  King timely appealed.

## II.[2]

King raises several arguments as to why he was entitled to a Franks hearing to prove that the affidavit supporting the search warrant for the UPS package was insufficient, but he overlooks that his "capacity to claim the protection of the Fourth Amendment depends . . . upon whether . . . [he] ha[d] a legitimate expectation of privacy in the invaded place."  Rakas v. Illinois, 439 U.S. 128, 143 (1978).  King bears the burden of proving that he had an expectation of privacy and that his expectation was reasonable.  United States v. Stearn, 597 F.3d 540, 551 (3d Cir. 2010).  He has not carried this burden, so we may start and end our analysis there.

"Senders enjoy a reasonable expectation of privacy in the content of their letters and packages."  Walker v. Coffey, 905 F.3d 138, 146 (3d Cir. 2018).  The same reasonable expectation of privacy is enjoyed by addressees of a package — fictitious or otherwise.  See, e.g., United States v. Givens, 733 F.2d 339, 341–42 (4th Cir. 1984); United States v. Pierce, 959 F.2d 1297, 1303 (5th Cir. 1992).  The same is not true for third parties like King, who "was neither the sender nor addressee of the package." United States v. Koenig, 856 F.2d 843, 846 (7th Cir. 1988).  And while King may have

---

[2] The District Court had subject matter jurisdiction under 18 U.S.C. § 3231.  This Court has jurisdiction to review King's conviction and sentence under 28 U.S.C. § 1291 and 18 U.S.C. § 3742(a).

been one of "the intended recipients of th[e] package," King Reply Br. 1, he cannot claim an expectation of privacy in a package sent under a fake name to someone else's address. We also see no objective facts in the record surrounding his purported privacy interest aside from his participation in an unlawful conspiracy to distribute methamphetamine. But a defendant must possess independent, legitimate "[e]xpectations of privacy and property interests" in order to challenge a search or seizure under the Fourth Amendment. United States v. Padilla, 508 U.S. 77, 82 (1993). The existence of "the conspiracy itself neither adds to nor detracts from" this Court's analysis of King's Fourth Amendment standing. Id.

In sum, the District Court correctly held that King lacked a reasonable expectation of privacy in the UPS package that was seized and searched, which constitutes sufficient grounds to affirm its ruling that he was not entitled to a Franks hearing.

## III.

For the foregoing reasons, we will affirm the judgment of the District Court.